4-170-899 Pleasant Hill Community Unit School District 3 v. The Workers' Compensation Commission Good morning. May it please the Court and Mr. Bishardi. My name is Michael Holt and I'm here on behalf of the appellant today. This is not a COPD case, so that's the good news. Could you speak up a little bit? That's just really primarily for deprivation, not amplification. Sure. So I'd like to discuss initially what is really the controlling argument in this case, which is whether or not it's against the manifest way of the evidence that the Commission concluded that Petitioner met the standard of ADLAT permanent total. There's a couple other arguments I raised in the brief, and I'm going to rest on the brief and just focus on this third most important argument of ADLAT. I do concede, coming in here, that it's a manifest way argument. I'm not here to say otherwise. And also not at issue, you know, we're not disputing that he had a work accident. We're not disputing, you know, medical causation or that the permanent work restrictions that I'm going to talk about are somehow not related to the work accident. At issue, this particular gentleman, Mr. White, the record shows he's high school educated. As best I could tell, it was roughly about an eight-year history of maintenance, six years or so with the school and a couple years with the municipality. He served in the military, and he's roughly 60 years young. The permanent work restrictions, the timeline in this case essentially, you know, picks up around the point in time when the FCE is done, which is July 2014, and then he sees Dr. Basho, who's the treating doctor, roughly in July 2014. And he gets imposed with permanent work restrictions, eight pounds constant, 20 pounds frequent, 40 pounds occasional, and then also no overhead work and no vibratory tools. My client didn't accommodate those restrictions. As part of the work injury and the surgery, he develops his vocal cord injury as part of surgery complication and has, you know, best as I can tell, a raspy voice or a soft voice. That's the way the vocational counselor for the petitioner described it. Now, the central issue I think that you tacitly acknowledged already is whether or not the claimant carried his burden of establishing by preponderance of the evidence that he fell into an ad-lib category, right? I mean, you're contesting that, correct? Yeah, that's the main argument of my brief is that it's, you know, I know I'm against the manifest way that I'm arguing that it's against the manifest way to the evidence. So let's hone in on, I think, some significant parts of the evidence. The claimant testified to what he believed was a diligent yet unsuccessful job search, correct? That's his testimony. That's his testimony, correct. And then it's backed up by this Reagan's Certified Rehabilitation Counselor. He supports the claimant's testimony and particularly focusing in a market where the claimant lived, his conclusion was he was not employable, correct? Yes. Okay. So then the commission adopted those findings. What was the flaw in that testimony? All right. I try to be as blunt and careful in my brief as possible because the court always wants to know, well, tell me your best argument. Well, you can be blunt. We don't care. So, yeah. So that's why I was starting with the permanent work restrictions of, you know, even if you boil it down to his essence, we're in the sedentary light category. And there's a couple other with no overhead tool usage and no vibratory tool usage. One of my points in the argument is sedentary work is a well-known branch of the labor market. And I cite to an appellate court case this Alexander case where the court says, hey, there's lots of different types of employment that involve sedentary work. So in asking the question, is this man, you know, disabled to the extent that, you know, he can only perform the most menial tasks that no employer is ever going to hire him, I'm contending just based on Dr. Basho's restrictions, if you look at that, there's still a residual functional capacity that he has less, a residual employment capacity, namely even taking Reagan's opinion, he can't do anything but unskilled labor in that sedentary range. All right, fine. Well, even within that range, my contention is he's still employable in the open labor market. You raised the question. Well, what's the evidence of that? You've got, you know, you're raising the issue of these sedentary positions. What evidence is there in the record that those were available to him? You're opining the general law regarding that, but how does it apply to this guy? All right. Reagan testifies, it's a bootstrapping argument that Reagan says, well, he did a diligent job search, and therefore that proves he's unemployable in the open labor market, right? And I'm getting ahead of myself in my argument, but it's not, if the court would take the time to look at the job search logs and rather than just defer to Mr. Reagan's who says, well, based on the job search logs, he did a diligent job search. If we're going to look at the job search logs and ask the question of whether they're diligent or not, you know, can we first have a definition of what is diligence because it's really not in the case law. It's talked about in some of the cases, such as Alexander, but, you know, the quantity of job search, whether, you know, they've used the technology that's available, how much they've done in terms of the job search. So the cases talk about it, but it's never really defined in terms of what the standard is. So when we, you know, us as a practitioner, we're trying to figure out what is or is not a diligent job search to assess whether the petitioner met the burden of proving one of the two elements of a diligent but accessible job search. How do we measure that? The arbitrator of the commission obviously found that he did engage in a diligent yet unsuccessful job search. I mean, that was their conclusion. So you are now arguing that he didn't, and if so, what are you basing it on? All right. Well, there was opinion testimony from Ms. Bowes, right, the vocational counselor for the respondent. She's really the only one that looked at the job search logs, and, you know, she's critical of them and points out a number of the flaws, and they're the same type of flaws that are talked about. You know, I want to stop you for a second. How does he satisfy his burden of establishing that he falls into an odd-lock category? In one of two ways. Yes. One is that by showing a diligent but unsuccessful attempt to find work, or, and this is the disjunctive, by showing that because of his age, skills, trainings, and work, he will not be regularly employed in a well-known branch of the labor market. If you take a look at Braden's opinions, quote, a stable labor market did not exist within which the claimant could find suitable and continuous employment in light of his age. Lack of transferable skills and his work restrictions. So even if we were to accept your argument about his job logs, he establishes odd-lock through Reagan's opinion on the second method by which he could do it. Are you suggesting that because of his age, his lack of transferable skills, and his restrictions that it's against the manifest way to suggest that that doesn't take him out of the stable labor market? My contention is if you take his permanent work restrictions, which are undisputed, you take what Basho says, I'm still left with a petitioner who has, you know, he's in the light, sedentary, with no overhead use, no vibratory tools, right? If you take what Reagan says, he says, well, none of those skills that he had before transfer to his residual functional capacity or employability today. Even if you take that, I still got a guy who's 60 years young, he's a military veteran, and he has the subset of the employment market that we call unskilled sedentary, right? My position is even taking everything that Reagan says is true, if you look at the actual medical restrictions, I'm going to talk about medical restrictions versus perceived disability in a second. If you take the medical restrictions, I still got a guy who's 60 years old in this wide geographic area. In my brief, I name all the cities in Illinois and all the cities in Missouri that show up in his job search log, so it's a wide area. And for the commission to then say that this guy cannot find a job in the unskilled sedentary job in this wide west central area of Illinois is against the manifest way of the evidence. Once he establishes Reagan's testimony that there's no job within the stable labor market, isn't it your obligation to come forward with evidence that there was such a job? Case law says that. And what evidence did you produce? My argument is twofold. I don't think the petitioner ever met that burden because, one, like I say, there's still this residual segment left of unskilled sedentary work that's out there. What are you talking about? Are you saying he could become a paper boy? I mean, I suppose you could say somebody, unless they're completely bedridden, could do something. Is that the test? He could be a paper boy? No. I think you start getting into the, you know, this person can't do anything but the most menial tasks. He's got a claw hand. He has a claw hand. He has difficulty with his eyes. He has difficulty with his speech. He can't use one of his external. I agree with that. I understand all that. And the point I make in the brief is there's a difference between, you know, medical restrictions. Mr. Reagan's can give competent opinion testimony on a vocational point but not on a medical point. So you can't raise the claw disability to a permanent restriction because Basher didn't impose any, or the voice problem. That's not an actual medical restriction. But understandably, that could be a perceived disability by an employer in the open labor market. So where I differ with Mr. Reagan's and where I think, you know, he doesn't go far enough in his analysis is you have to say because of that, those disabilities, you know, he's unable to perform the essential functions of a job. It's not enough to say, well, you know, some employers don't like people because, you know, they wear a certain type of clothing or something like this. It doesn't go far enough to foreclose his potential employability in the unskilled labor market. I didn't get an answer to my question from you. I'm sorry? I didn't get an answer to my question from you. What job did you, what evidence did you put forth that there was a job available to him? All right. I would rely on the opinion testimony of Ms. Bowes, the vocational counselor. And she cited, you know, three or four examples where these are the types of works, these are the types of jobs that remain available to him. And she mentioned, you know, security guards. She mentioned because of his maintenance background, he might be good at working behind a sales desk. There was another one that she talked about. So to answer your question, I think that evidence satisfies potential rebuttal. Bowes and Reagan gave conflicting opinions, and it was the commission's job to make a determination as to which one was credible. They didn't find Bowes terribly credible. They disregarded almost all of her opinions. And I understand what you're saying, but I still go back to the fact that if you look at the available to this gentleman, namely unskilled secretary of labor. Well, hypothetically or theoretically, but where was the job recommendations? One of the flaws, and apparently the commission fell with Bowes' recommendations, is that it did not establish that these jobs you're hypothetically talking about were available on a quote-unquote continuous basis in the quote-unquote claimant's labor market. I mean, you're making a hypothetical argument, but where did we tie it into a specific place? Because as I recall from the evidence, he's in a rural area 50 miles, 50 miles from any reasonable job that you're talking about. Right. I believe the evidence is sufficient just from what she testifies to, that these are the types of jobs that are available to him. Were those types of jobs available within his labor market? That's the question. No, that is the question. What jobs did she identify within a reasonable radius of his home that were available to him? I think what you're getting at, there was no labor market survey done. I think what I'm getting at is you introduced no evidence that there was such a job, that these jobs were available to him within his labor market, and you produced no evidence to establish that. She said generally he could do this job, he could do that job, he could do the other job. But you introduced no evidence that those jobs were available to him. And my position still would be the burden never shifted to us to do so. Well, if it did shift to you, it might surprise you to find that it did. Let me put it this way. If we were to conclude that it was sufficient to shift the burden, what is your response? What specific jobs were pointed out to that were available in his labor market that you gave the example of the light van driver, janitorial supply clerk? What evidence was there that those specific jobs were available in his labor market? Can you point us to that evidence? Other than her testimony that they are. Her general testimony. Her general testimony, opinion within a reasonable vocational certainty, these are the types of jobs that he can still perform. We didn't go the next step and introduce a labor market survey. I concede that. Right. So the missing link is I agree with you if they were available. But there's no evidence that he says they were available. And my point still is if you look at a case like Alexander where Dishner's job search was flawed and the court just comes out and writes, you know, I don't think I have to go that step necessarily when we have a BASHO restriction, the permanent restrictions still allow a segment of the labor market, whether it's sedentary or sedentary light, that's enough on its face to beat back the petitioner's prima facie case. I don't need to go that next step because unskilled sedentary. Your time is up and you'll have time in the law. Thank you. Thank you. Mr. Polk, my name is John Bishardi for the NLE. This is a manifest way of the evidence case. The Illinois Workers' Compensation Commission had a chance to review the job search documentation and Mr. Reagan's testimony and the testimony of his spouse. The commission concluded that Dishner performed a diligent job search and not only did he perform a diligent job search, he also, Dishner also offered the evidence and testimony of Mr. Reagan's. At that point, the burden did shift to the respondent to demonstrate that there was some suitable employment available to the petitioner in his circumstances. There is no evidence of the record to that effect. Then what do you make of his argument that he responds by saying, hey, wait a minute, those testified has listed a bunch of jobs that he could do theoretically. So how do you respond to that argument? There's no evidence in the record that those jobs existed in this labor market. That were actually available. That were available. That's correct. It's a generalized statement. These statements are made all the time and the petitioner is not required to prove that he's incapable of performing every type of activity, merely that there's no suitable work. In light of those factors in his labor market. He's done that. He carried his burden. Proof of that. Respect to that. I think the fact that he had interviews lends even more credibility to his own testimony and the job search that he did that it was diligent. I think the commission relied upon that as well. Just to say that he was on a computer, he testified he went to these interviews. Yes. He did. And he also did computer job searching even before he met with the Bose people because the first job that he applied for was a flea without fruits and that was online as well before he met with them. So he was well-versed in what he had to do. It's not as if he did this in a vacuum without advice. That doesn't happen. There are a number of different sources for job leads. He tried all of them. He did try a number of jobs that he felt were within his restrictions. He doesn't always know what jobs are within your restrictions when you're applying for a position. There were criticisms of that and criticisms that he wasn't allowed or didn't leave a job application on site when they were telling him there were no job openings. But he, in fact, testified he did. And even Ms. Bose admitted that some employers wouldn't even take that. I believe the commission's decision here is consistent with the manifesto of the evidence. We request that it be affirmed. If there's any particular questions you have about the various evidence, I'm happy to respond. I don't believe there are. Thank you, counsel. Counsel, you may reply. The issue of the diligence of the job search, I'm going to take one minute and I'll sit down. There was a meeting that Mr. Reagans had in February of 2015, and then there was a telephone call in April of 2015. He gives the opinion that it's a diligent job search. I raise this in my brief and I argue it now, that there's no evidence that he looked at the job search logs after February 2015. The job search goes on until about August 2015. So the last six months of job search, according to just the timeline, Reagans doesn't review. That's significant because McCarthy in the decision relies on Reagans saying, well, Reagans thought he did a diligent job search. Now I've got an expert that didn't look at the job search logs. That's why I keep pressing on the court to tell us what it is to do a diligent job search in 2017, because it's really not defined. Reagans, who didn't look at the job search logs? Who didn't look at them? Reagans. Just based on the timeline that I can see that he met with the petitioner in February of 2015, and then there was only a telephone call in April of 2015, but there's no real evidence that he did what Ms. Bowes did and looked at the job search logs and peeled them apart. Assuming that's true for the sake of the argument, doesn't that really only go to the weight to be given to the evidence, not its admissibility? I think it goes a little further than that. That would be my argument, that you're relying on an expert who says there's a diligent job search and he doesn't look at the records in support of that opinion. So I think it goes a little bit further than that. Goes to admissibility of his opinion? Well, the opinion came in. There was no objection. We're not here on a motion to exclude or anything like that. Excuse me. If the opinion comes in and he's right, it only goes to weight. It's either admissibility or it's weight. It's one or the other. Okay. So let's say it goes to weight. Then look at the job search logs, which are in the evidence. And my contention is, according to cases like Alexander, he doesn't meet the definition of a diligent job search. That's my contention. So thank you. Thank you, counsel, both for your argument. This matter will be taken under advisement of the disposition position.